The next case today is Samuel Knuthia Gicharu v. Donna Carr et al. Appeal number 191864. Attorney Golding, please proceed with your argument. May it please the court, Attorney Joanna Golding for the appellant Mr. Samuel Gicharu. Good morning. Good morning, counsel. Good morning, your honor. Request to reserve two minutes of rebuttal time. You may. Thank you. While this case involves a long procedural history, question before the court is whether this court can and will protect the rights of the appellant by applying protection under habeas corpus in the Administrative Procedure Act, the APA. Though the case involves a long complex procedural history, the facts in simplicity do show that Mr. Gicharu has consistently pursued relief before the court, beginning when he timely pursued an affirmative asylum application after fleeing his home country of Kenya in 2003. The affirmative filing was processed and referred to the court and then the board. During this time, Mr. Gicharu worked diligently with prior counsel, who he and his wife relied on for 10 years, but unfortunately, prior counsel ineffectively represented them as concluded by the Mass Board of Bar Overseers and the District Court Judge Bullough. Ms. Golding, if you could write the court order that your client wants from the District Court, what exactly is the relief you are asking for? The relief that my client requests is to seek reissuance, an order to the board to reissue their decision issued in March of 2013, would be dated contemporaneously given that he missed his opportunity for review because he did not receive that decision in March of 2013. This would remedy the wrong to my client and would give him the opportunity to seek direct appellate review by effectively resetting the clock. But didn't that issue come before us on appeal before? In some ways, your honor, yes, but we are bringing it again in this venue as it is, he does have the right to bring this clearly before this court on habeas corpus. When that issue was brought before the court, it comes under a regulatory guideline to the board, it is through a motion to reopen, and my client, Mr. Gucharu, did not get full review of that matter. The board looked at that matter fairly cursorily, did not address the due process argument, the argument of non-delivery, and so effectively would like to bring it before this court very soon for a habeas claim. But how do the facts change? Even assuming the attorney was ineffective, there is a separate obligation on your client to provide the government with the change of address. So, your honor, my client did properly notify the government. Not on the form that they need. Well, I would argue, your honor, that he did properly comply with the act itself. He completed a change of address, and that address was completed before the board issued their decision. That address was completed according to the act at 1229A1F, and that act requires only that an address change be made in writing. It does not specify that a particular form be used. Therefore, arguably, Mr. Gucharu did comply with the address change. Five minutes remaining. Yeah. You have another problem, too. He found out about the order within a month or two, and yet then waited, I think, more than another year to file anything, didn't he? More than that. So, he found out, his prior counsel, who it's been found by District Court Judge Below that did act ineffectively, and by the Mass Board of Bar Overseers that it was ineffective. He found out from prior counsel approximately two months after the decision. As I began in my introduction, he relied on that counsel for 10 years to pursue relief. Therefore, he continued to rely on that counsel in pursuit of relief. Even though he had changed his address, it was never delivered to him. The complex procedures before the court and the board have prejudiced my client in being able to seek full relief. Therefore, he comes before this court to request your relief, both under habeas and under the Administrative Procedures Act, for the unlawfully withheld action by the board in failing to properly send this address to him. Though it has taken him quite some time, he has pursued diligently. If you look at the course of his actions, the slide begins with... Counselor, could you just hang on a second? Certainly. Judge DeWay is frozen, so he might not be. Can you hear? I am. Yeah. I can hear. Okay. Okay. Thank you. Thank you. As I've explained, in the course of his pursuit of relief, this began, his pursuit of relief began in 2003 with an affirmative application filed for asylum. He has diligently pursued his rights and is requesting relief from this court to continue to pursue that right. He requests, as Your Honor Kayada first requested, what are we asking for? We are asking for his day in court. Should the board reissue their decision, he will have an opportunity for direct appellate review of the petition, of the immigration judge's decision below. Counsel? Yes. The notices that were supposed to be sent to your client, were they also sent to his lawyer? Yes, Your Honor. They were sent to his lawyer. Unfortunately, his lawyer had not properly changed his address with the board. Therefore, they were sent to his lawyer and were sent to a prior address of my client. Both decisions that were mailed out by the board were left undelivered, returned back to the board as undelivered. The board had this knowledge and despite that, has failed to take action which they can, which is to remedy this error and allow my client his day in court, seeking direct appellate review of the petition for review. The district court judge below found that there was no prejudice to my client and would like to address that matter. My client has presented prejudice. Mr. Gacharo has met the standard to show a reasonable likelihood that fought for ineffective assistance. There would have been a different outcome on appellate review. Mr. Gacharo's testimony that he actively withdrew support for Mungiki based on his religion and politics and contrary to the immigration judge's conclusion that he was a member of the Mungiki, would not meet a substantial standard of evidence on direct review. The district judge erred in failing to see this error below. Further, the record on de novo review would show nexus for persecution on account of Mr. Gacharo's religion as a Christian opposed to the Mungiki, a violent child gang who threatened and persecuted him in Kenya. Further, the record on de novo review would show that, as stated by Mr. Gacharo, that the Kenyan government was unable to control Mungiki. Counsel, that's time. Sure. As evidenced, if I could just conclude this thought, as evidenced by the fact that his and attacked by the Mungiki, the errors by EOIR would have been and can still be corrected should Mr. Gacharo be afforded an opportunity for direct appellate review on a petition for review. Thank you, Your Honor. Thank you. At this time, would Attorney Kevin Hurst please proceed? May it please the court, Kevin Hurst, the INA channels judicial review of all questions of law and fact arising from the removal process through a petition for review to an appropriate court of appeals. The petitioner in this case already took advantage of this process. After this court denied those claims, he brought his claims again in district court, which is the one forum that Congress has expressly denied it. By concluding it had jurisdiction, the district court subverted Congress's intent to avoid the type of bifurcated litigation that we've seen in this case and that the INA's channeling provision was designed to end. The government asked this court to hold that the district court lacked jurisdiction to adjudicate both the APA and the ineffective assistance plan for two reasons. First, under this court's prior decision in Aguilar, both claims fall within the scope of the channeling provision at 8 U.S.C. 1252 B-9. Second, the APA by its own terms bars Mr. Gicharu's APA claim, whereas here the PFR is an adequate remedy. However, even if the district court had jurisdiction, as the district court correctly held, both of plaintiff's claims lack merit. Under well-settled precedent, the BIA discharged its duty to notify plaintiff of its decision when it mailed a copy to the address of record for both Mr. Gicharu and his counsel. And second, the court correctly denied his motion to amend his feudal because he failed to plead a necessary element of this ineffective assistance claim, specifically prejudice. For these reasons, the government asked the court to affirm the district court's order and hold that the Immigration and Nationality Act and the APA deprived the district court of jurisdiction. Now, I'd like to begin first with the jurisdiction or the channeling provision at 1252 B-9 in this court's prior decision in Aguilar. In that case, this court's scope of that provision and described that provision as breathtaking and vice-like, but acknowledged there were some limits. And in attempting to determine where those limits were, the primary consideration or the primary factor that this court looked at was whether stripping the district court of jurisdiction would deny meaningful judicial review. And to determine that, it looked at whether the claim can be raised and how frequently the claim is raised in a petition for review to this court. Now, in both instances, both of Mr. Gicharu's claims are almost exclusively raised in a PFR. Now, if we look specifically at the ineffective assistance of counsel claim, in our brief, we cite to a number of cases where that claim was specifically raised in a petition for review. And more to the point, the BIA entertains these claims so frequently that it saw fit in matter of Lozada to lay out its own rules and procedures for these types of claims that they frequently see. Turning to the APA claim, in effect, Mr. Gicharu's request for a motion to re-issue, again, we see that these claims are frequently raised through the PFR process. So, under this court's prior holding in Aguilar, the 1252B9 strips the district court of jurisdiction to hear either claim. Turning to our second argument, the APA jurisdictional bar, 5 U.S.C. 704 limits APA review to final agency action for which there is no other adequate remedy in a court. In this case, the PFR process clearly provides an adequate remedy. Courts who have addressed this specific provision have looked at a couple of factors when addressing adequacy. One is whether there's clear and convincing evidence of legislative intent to create an alternative remedy, and the second is whether the relief is of the same genre. Both factors tip in favor of finding no district court jurisdiction in this case. Turning to the clear and convincing evidence, we can begin with the plain language of the statute to issue in this case, 1252A5 and 1252B9. Beginning with A5, it begins with the language, notwithstanding any other provision of law, statutory or non-statutory, including section 2241 or any other habeas provision. Then turning to 1252B9, it refers to any action taken or proceeding brought to remove an alien from the U.S. shall be available only in judicial review of a final order. More to the point, if we look at the legislative history, the Supreme Court's finding in the NSVC where the Supreme Court held that Congress did not speak with sufficient clarity in the legislative history, Congress went back in 2005 and amended the statute to make that absolutely explicit, and in the legislative history, it actually identifies that decision and identifies legislative intent to overrule the statute in that decision. Turning to whether it's relief of the same genre, the circuit court has the same equitable powers, excuse me, as the judicial court, and as this court held the first time the Supreme Court returned to its board, the standards are essentially just to identify whether there is substantial misdirection issues, and whether there are errors in the arbitrary and capricious decision-making. We're saying there's an APA in SB 1006, and this is a long, long, long time. I just want to raise a few things, because I was not referring to anything. To the extent that the district court discussed the study process, we raised in our brief, I think this is inappropriate and doesn't form the basis for this case. But to the extent that there's been a debate at the time that district court issued the report, the Supreme Court's decision in the APA, in that case, the Supreme Court held that suspension clause doesn't apply where habeas is used, not to secure release, but to obtain further review of an asylum claim. And that's essentially what Mr. Gutiérrez, as his counsel just noted, is asking for here, is an attempt to contest his removal in an attempt to secure further review of his asylum claim. So under the Supreme Court's holding in Thurasigian, that suspension clause argument is foreclosed. I have a question that I probably should hold the answer to, but maybe you can help me. Does the claim of lack of jurisdiction apply also to the habeas claim? Yes, Your Honor. That's our primary argument in our brief, is that the fact that it's a habeas claim doesn't save it. The jurisdiction stripping provision clearly extends, and in fact, was amended for the express purpose of making Congress's intent clear that it does extend to habeas petitions. And the same for the... So the fact that he's framing it as a habeas petition doesn't save him from the jurisdictional bar and the channeling provisions at 8 U.S.C. 1252 B9. And as I'm running low on time, if I could just briefly address the merits. We think that the First Circuit case law pretty definitively shuts the door on any relief on the merits. The obligation to provide notice issue was definitively... The controlling case on that issue was Toba Tangeng, which is on all fours with this one. In that case, counsel provided conflicting addresses, but this court held that, notwithstanding that, the BIA discharged its duty when it mailed the notice of the decision to the address of record it had for that petitioner's counsel. Turning to the ineffective assistance claim, as the district court correctly held, prejudice can't be presumed, and it's cited to this court's prior decisions in Franco, Arden, and Hernandez v. Reno. And if your honors have no further... Well, how do you respond to counsel's argument that they did provide notice, but albeit not on the form that was requested, or that the petitioner specifically provided an updated address, which is all she says the statute requires? Well, under this court's prior holding in Toba Tangeng, the court held that the BIA's obligation is satisfied when it sends the decision to the address of record. Now, the petitioner's claim is that, well, he notified USCIS when seeking other relief that he had changed his address, but he never mailed the form that's required and that's laid out on the NTA he was served with, informing the BIA that he had changed his address. As for his counsel... Counsel, that's time. Would you like me to finish the question, your honor? Please do. Okay. With regard to his counsel, his counsel noted in seeking an amended briefing schedule that he had changed his address. So in response, the BIA sent him a new briefing schedule at the new address, and sent him the form he was required to fill out, and asked him to submit that with his updated address. The form he submitted contained his old address. So the BIA, relying on that, sent the decision to the address he provided on the form that was provided to him. So as this court held in Toba Tangeng, regardless of whether Mr. Gicharu received notice of it or not, the BIA discharged its duty when it mailed it to the address of record for his counsel of record. And for that reason, his APA claim fails. And for these reasons, we would ask the court to affirm the district court's opinion, but on the grounds that the district court lacked jurisdiction in the first place. Thank you, your honor. Thank you. At this time, I'd like Attorney Golding to unmute and give rebuttal. Thank you, Clark. Thank you, your honors. I would like to go back on the jurisdictional issue and the habeas claim. In terms of the Real ID Act, as described and decided by this court in the Aguilar decision, the Real ID Act is certainly a sweeping and expansive change to the law. However, there are limits to the Real ID. And these limits should be considered as claims channeling rather than claims barring. In a case such as this, in Mr. Gicharu's, he is not seeking review of the order itself, which is the assessment of EOIR's conclusions of fact and law properly done in a petition for review on an asylum case. But rather, he is seeking to raise a collateral right, which is whether or not he was properly notified of the decision. So he's not seeking merits of the review of the decision itself from this court. Rather, he is seeking this court to decide under its jurisdiction that, in fact, he did not receive the decision properly. This is squarely and analogous to the Ninth Circuit decision in Singh, which was relied on heavily in my briefing. Again, this client has pursued his relief persistently and consistently in all the courts, all the avenues that he's had. And we only seek a day in court at this time from this court. Allow him to go back to the to seek a petition for review. As discussed, he has been prejudiced and he would seek on petition for review. He would seek review of the actions by EOIR. Further, in terms of the errors by the court below and in terms of updating his address, I would ask this court to consider all of these errors affecting my client and allow him under both the Administrative Procedures Act and the habeas jurisdiction to seek this day in court. Thank you. Thank you. That concludes argument in this case.